## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA SCULLY, | : | Case No. 1:17-cv-685 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| HAMILTON COUNTY | : | |
| DEVELOPMENTAL DISABILITIES | : | |
| SERVICES, *et al*., | : | |
| | : | |
| Defendants. | : | |

## ORDER: (1) RESOLVING ALL PENDING MOTIONS; AND
## (2) TERMINATING THE CASE ON THE DOCKET OF THIS COURT

This civil case is before the Court on the following motions: (1) Defendants Jerry Clark, Allison Leedy, Alice Pavey and the Hamilton County Developmental Disabilities Services ("DDS") (collectively, the "DDS Defendants")'s motion for summary judgment (Doc. 89) and the parties' response memoranda (Docs. 92-1, 95); (2) the DDS Defendants' motion to strike Plaintiff Jessica Scully's response in opposition to their motion for summary judgment (Doc. 91), and Scully's responsive memorandum (Doc. 92); (3) the DDS Defendants' motion to strike Scully's affidavit (Doc. 94), to which no response was filed; (4) Defendant M.C. Mobility Systems' motion for summary judgment (Doc. 108), to which no response was filed; and (5) M.C. Mobility's alternative motion to enforce the settlement agreement (Doc. 110), to which no response was filed.

## I.     BACKGROUND[1]

### A.     Undisputed Facts Related to the DDS Defendants

Plaintiff Jessica Scully is a disabled Hamilton County, Ohio resident, suffering from a progressive condition called fibro dysplasia ossificans. (Doc. 93 at ¶¶ 1–2). Scully has been confined to a motorized wheelchair since age fourteen, and she has received services from the DDS Defendants for over ten years. (*Id*. at ¶¶ 1–2, 61).

Scully's medical care payment is governed by a complex payer sequence pursuant to Ohio rules and regulations. (*Id*. at ¶ 19). Her payer sequencing is as follows: (1) private insurance through Medical Mutual; (2) Medicare; (3) Medicaid; and (4) Home and Community-Based Waiver. (*Id*. at ¶ 16). Given this payer sequencing, Scully's providers must be: (a) approved by her private insurance; <u>and</u> (2) as a home and community-based waiver provider. (*Id*. at ¶ 17). This may result in only a select few eligible providers for Scully's services. (*Id*. at ¶ 27). Moreover, a provider may remove itself from the list of willing providers at any time without reason, and an individual may choose to switch to a different qualified and willing provider at any time without reason. (*Id*. at ¶ 25).

---

[1] Pursuant to this Court's Standing Order Governing Civil Motions for Summary Judgment, the moving parties submitted proposed undisputed statements of facts with their opening briefs. (Docs. 89-1, 108-1). When responding to the DDS Defendants' statement of facts, Scully does not comply with the Standing Order, failing to provide specific citations to the record when denying certain facts. (Doc. 92-2). The Court will disregard Scully's unsupported denials. Moreover, Scully fails to respond to M.C. Mobility's statement of facts; thus, the Court may properly rely upon the facts provided by M.C. Mobility. *See Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 404–05 (6th Cir.1992) (holding that a district court properly relies upon the facts provided by a moving party when a motion for summary judgment goes unopposed).

DDS is a Medicaid local administrative authority and provides services to 7,800 disabled individuals in Hamilton County. (Doc. 89-1 at ¶¶ 2, 77). DDS is governed by a board, which board is responsible for overall administration, not the day-to-day operations of DDS. (*Id*. at ¶ 4). The Ohio Department of Developmental Disabilities ("DODD") provides oversight of DDS to ensure compliance with state and federal rules and regulations. (*Id*. at ¶ 3). DODD and the Ohio Department of Medicaid ("ODM") – not DDS – govern certification and agreements with qualified and willing providers. (*Id*. at ¶¶ 9, 11). A "provider" is an entity or independent person who is certified by DODD and has a Medicaid provider agreement with ODM. (*Id*. at ¶ 13).

Defendant Alice Pavey is the Superintendent/CEO of DDS, and reports to a seven-member board of directors. (*Id*. at ¶ 77). In this role, Pavey responsibilities include: (1) serving as a professional advisor to the board; (2) recommending and implementing policies; (3) informing the board of programs; (4) developing a budget; (5) recruiting qualified and competent staff; and (6) conducting community outreach. (*Id*. at ¶ 5).

Pavey and Scully spoke on occasion in 2015 or 2016, with Scully complaining to Pavey about the services provided by DDS and the safety of the wheelchair lift in her van. (*Id*. at ¶ 75). Following these complaints, Pavey offered to switch Scully's Service and Support Administrator ("SSA"), but Scully declined her offer. (*Id*. at ¶ 78). Pavey is not involved with the specifics of Scully's day-to-day care, or any other individuals served by DDS. (*Id*. at ¶ 79).[2]

---

[2] In Scully's response to the DDS Defendants' facts, Scully states that this fact is disputed and that Pavey's claim that she has not provided input on Jessica's care is "disingenuous." (Doc. at

Defendant Allison Leedy, now a SSA Manager with DDS, was previously a SSA Supervisor, managing Clark and 11 other SSAs. (*Id*. at ¶ 81). In this role, Leedy's responsibilities include: (1) providing training, oversight, support, and direction to SSAs in accordance with DDS' policies, procedures, and governing rules; and (2) assisting with day-to-day matters when her reports are unable to resolve those matters on their own. (*Id*. at ¶ 6).

In September of 2015, Leedy assisted with Scully's day-to-day care when Clark was on an extended period of leave. (*Id*. at ¶ 74). At the time, DDS was assisting Scully with her search for a potential homemaker personal care provider. (*Id*.) Leedy offered to call potential providers for Scully; however, Scully declined the offer and did not ask for additional help. (*Id*.; Doc. 92-2 at ¶ 74). Leedy also spoke to Scully on the phone and visited her home on June 20, 2016 to problem solve and to discuss Scully's services. (Doc. 89-1 at ¶ 82).

Defendant Jerry Clark is Scully's SSA and has served in that role since 2014. (*Id*. at ¶ 62). As an SSA, Clark's responsibilities include: (1) being the primary point of contact to develop, implement, and coordinate an individual's service plan ("My Plan"); (2) ensuring the individual being served is given the opportunity to select from all willing and qualified providers; (3) providing ongoing coordination of an individual's My Plan; and (4) keeping lines of communication open by the individual's preferred method. (*Id*. at ¶ 7). For example, Clark may assist with the coordination between Scully and a

---

92-2). Scully provides no evidence or citation to the record to support this assertion. The Court considers this fact undisputed.

qualified and willing provider for a new powered wheelchair. Although Scully alleges instances purporting to show that Clark has failed to provide or interfered with her services, Scully has never asked to have Clark removed as her SSA nor has she ever requested that Clark be replaced with someone else. (*Id*. at ¶ 65).

Scully admits that no Defendant has made any negative comments about her disabilities, mentioned this litigation to others or providers, or made negative statements during any of Scully's Medicaid appeals. (*Id*. at ¶¶ 66, 69). Scully's primary home care provider for at least the past nine years, her daughter Ali, also admits that her and her mother have a "fine" working relationship with Clark and, on the whole, get along well with Clark. (*Id*. at ¶ 76).

### B. Undisputed Facts Related to M.C. Mobility

M.C. Mobility installed a wheelchair lift and EZ Lock locking mechanism in Scully's van in November 2014. (Doc. 108-1 at ¶ 3). M.C. Mobility returned the van to Scully on November 17, 2014. (*Id*. at ¶ 4). After Scully reported that the lift in her van was too large, maintenance was completed on her van again. (*Id*. at ¶¶ 5–6). A used, EZ Lock (part of the mechanism) was installed on December 20, 2014, and a new lock ordered. (*Id*. at ¶ 6). The new EZ Lock was installed on February 4, 2015. (*Id*.)

In the interim, on January 26, 2015, Scully injured her toes getting into the van, which injuries she attributed to the EZ Lock system. (*Id*. at ¶ 10). Scully was in another injury accident on February 2, 2016 while in her van; however, does <u>not</u> attribute any injuries from that accident to the EZ Lock. (*Id*. at ¶ 11). As of August 29, 2019, Scully

5

was still using the same van, lift, and EZ Lock system. (*Id*. at ¶ 13). She has reported no other injuries. (*Id*.)

### C. Procedural History

Scully filed her original complaint on October 12, 2017 with the assistance of counsel against 19 defendants. (Doc. 1-2). Overtime, via voluntary dismissals (Docs. 45, 81) and this Court's Order resolving multiple motions to dismiss (Doc. 55), only the DDS Defendants and M.C. Mobility remained as defendants.

On April 3, 2020, pursuant to the then-current Calendar Order (Doc. 63), the DDS Defendants filed a timely motion for summary judgment (Doc. 89), which motion is currently pending before the Court. At that time, Scully was still represented by counsel, and responded to the motion with assistance from counsel. (Doc. 90). Scully's response prompted the DDS Defendants to file the currently-pending motion to strike Scully's response in opposition because Scully's response failed to comply with this Court's Standing Order. (Doc. 91). Scully, with the assistance counsel, responded to that motion, including an amended affidavit of Scully. (Docs. 92, 93). That amended affidavit prompted the DDS Defendants to file the motion to strike Plaintiff's affidavit (Doc. 94), their third motion at issue in this Order.

On May 18, 2020, M.C. Mobility and Scully, through counsel, informed the Court that M.C. Mobility and Scully had reached a tentative settlement agreement. (Doc. 110-2). However, it would take additional time to fully finalize as M.C. Mobility needed documentation from Scully regarding any liens before payment could be made. (*Id*.)

Then, after suffering major health issues and unexpected changes to her practice, Scully's counsel moved to withdraw, which motion this Court granted. (Docs. 96, 97; 7/9/2020 Notation Order). Given Scully was no longer represented, the Court stayed the action for 90 days to afford Scully the opportunity to either obtain new counsel or elect to proceed *pro se*, and scheduled a status conference at the end of those 90 days. (7/9/2020 Notation Order). In that Order, the Court advised Scully that she must appear at that conference, either herself or through new counsel, and provided a call-in number. (*Id.*)

Scully did not appear at that conference, calling the incorrect number. (9/28/2020 Minute Entry and Notation Order). The Court scheduled another status conference, advising Scully of the steps to call-in to the conference and advising Scully that she must appear, either herself or through counsel. (*Id.*) Scully, *pro se*, called into the next conference and indicated she intended to proceed *pro se*, unless or until she hired new counsel. (10/26/2021 Minute Entry and Notation Order).

About two weeks later, on November 9, 2020, the Court held another status conference. (Doc. 101). At the conference, Scully was directed to sign and mail necessary medical authorizations to complete the settlement between Scully and M.C. Mobility. (*Id.* at 5). Scully was further ordered that failure to comply and fairly participate in this action may result in sanctions, including dismissal of this case. (*Id.*)[3]

The Court held another status conference one week later. (11/16/2020 Minute Entry and Notation Order). At that conference, Scully confirmed to the Court that she

---

[3] This Order also discussed various issues between the DDS Defendants and Scully. (Doc. 101). Those issues are all resolved, and this Court's involvement has concluded. (11/16/2020 Minute Entry and Notation Order; 4/6/2021 Email from Jessica Scully, on file with the Court).

had sent the necessary medical authorizations to M.C. Mobility's counsel. (*Id*.) Scully also informed the Court that she intended to proceed with the case. (*Id*.) Thus, the Court lifted the stay, and granted M.C. Mobility leave to file a motion for summary judgment and/or to enforce the settlement, in the event M.C. Mobility was unable to complete settlement with Scully. (*Id*.) Moreover, Scully was ordered to timely file any response in opposition to those motions. (*Id*.)

The Court granted M.C. Mobility an extension of time to file its motions to allow for additional time to try and complete settlement. (2/23/2020 Notation Order). Unable to receive necessary papers from Scully and to finalize the settlement, M.C. Mobility filed the instant motions for summary judgment (Doc. 108), or alternatively, to enforce the settlement (Doc. 110). Scully has not responded to either motion.

## II.     DDS DEFENDANTS' MOTION TO STRIKE RESPONSE IN OPPOSITION (Doc. 91)

The DDS Defendants' move to strike (Doc. 91) Scully's first response in opposition (Doc. 90) to their motion for summary judgment. The DDS Defendants ask this Court to strike the opposition for failing to comply with this Court's Standing Order Governing Civil Motions for Summary Judgment and ask this Court to order Scully to file a conforming brief and respond to their proposed undisputed facts. (Doc. 91 at 1).

When responding to the motion to strike, Scully also provided an amended response in opposition and responded (albeit incorrectly) to the DDS Defendants' proposed undisputed facts. Accordingly, the DDS Defendants' motion to strike Scully's first response in opposition (Doc. 91) is **GRANTED**. The first response (Doc. 90) is

hereby **STRICKEN**.  The Court will consider as timely Scully's amended response in opposition (Docs. 92-1; 92-2).

### III.    DDS DEFENDANTS' MOTION TO STRIKE SCULLY'S AMENDED AFFIDAVIT (Doc. 94)

The DDS Defendants also move to strike (Doc. 94) the second affidavit of Scully (Doc. 93-3), which affidavit was attached to Scully's amended response in opposition to the DDS Defendants' motion for summary judgment (Doc. 92-1).  The DDS Defendants request that Court strike Paragraphs 8, 14, and 22–25 for failing to satisfy the requirements of Federal Rule of Civil Procedure 56(e), and Paragraphs 4, 13, and 16 as contradictory to Scully's prior deposition testimony.

As an initial matter, Scully did not oppose the motion to strike, although she was represented by counsel at the time of her response deadline of June 19, 2020.  This alone could result in granting the DDS Defendants' motion.  *See* S.D. Ohio Civ. R. 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees.").  However, Scully's counsel's motion to withdraw as attorney was filed on June 16, 2020. (Doc. 96).  The Court did not grant counsel's motion to withdraw until July 9, 2020 in order to provide Scully sufficient time to respond to the motion.  S.D. Ohio Civ. R. 83.4(c)(4).  Thus, the Court will consider the DDS Defendants' motion to strike on the merits, given the procedural posture, Scully's change from represented to *pro se* status, and in the interest of considering Scully's claims on the merits rather than a technicality.

Federal Rule of Civil Procedure 12(f) provides that, upon motion, "the court may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking an affidavit or a portion thereof lies in the trial court's sound discretion. *Aerel S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). These requirements are mandatory. *See also Harrah's Entm't Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir.2004) ("It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment."); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002) (affidavit must be based on personal knowledge, not hearsay or inadmissible evidence). Affidavits that do not satisfy the requirements of Rule 56(e) are subject to motions to strike. *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000).

Moreover, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). When faced with a request to strike a post-deposition affidavit, this Court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L*, 448 F.3d at 908. If such a contradiction is found, this Court must strike the affidavit "unless the party opposing [] provides a persuasive justification for the

10

contradiction." *Id*. If there is no direct contradiction, the district court "should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue." *Id*. (citation omitted).

### A.    Rule 56(e) - Paragraphs 8, 14, 22, 23, 24, and 25

The DDS Defendants contend that Paragraphs 8, 14, and 22–25 should be stricken for failing to satisfy the requirements of Rule 56(e).  (Doc. 94 at 2–3).  The Court will take each paragraph in turn.

The DDS Defendants request the following statement be stricken from Paragraph 8: "I also lost a physician (Dr. Fieler) after ten years who was sick and tired of providing duplicate prescriptions for a powered custom chair."  (Doc. 93 at ¶ 8).  The DDS Defendants contend that Scully, without any foundation, is offering an opinion as to why her physician stopped treating her.  (Doc. 94 at 2).  The Court will not strike this paragraph, given that it is a <u>personal</u> "opinion" or impression offered by Scully as to why her physician stopped treating her.[4]  Accordingly, the DDS Defendant's motion to strike Paragraph 8 is **DENIED**.

Paragraphs 14 and 23 describe an unauthenticated email attached to Scully's affidavit between "drew.prior@nsm-seating.com" and "dneal@healthwares.com."  The DDS Defendants claim this is inadmissible hearsay.  The Court agrees.  Scully fails to authenticate or provide any foundation to this email in her affidavit or materials in support of summary judgment.  Accordingly, Paragraphs 14 and 23 are **STRICKEN**.

---

[4] This paragraph is not construed as the physician's actual reason for stopping treatment, given the Court is not presented with any foundation or opinion of Dr. Fieler.

Paragraph 22 reads: "My insurance policy with Medical Mutual allows out-of-network providers unlike that claimed by DDS." (Doc. 93 at ¶ 22). Similarly, Scully avers in Paragraph 24:

> Contrary to the #27 on Defendants' Exhibit of the vendors Medical Mutual does not limit providers to some select list. It has always been my experience that they will work with any duly qualified Medicaid provider. The severe limiting on providers that DDS will work with seems to be entirely a DDS policy, as is the singular entity who DDS will hire to fit those needs and services.

(*Id*. at ¶ 24) (emphasis added). The DDS Defendants contend Scully is not competent to make these assertions. (Doc. 95 at 3). The Court agrees in part.

Scully provides no foundation about her knowledge of what Medical Mutual provides or does not provide. Moreover, in response to the DDS Defendants' proposed undisputed facts, Scully admits that: (1) "[Medical Mutual] has an approved vendor list;" and (2) "Of the vendors Medical Mutual works with only select few are also qualified and willing home and community-based waiver providers." (Doc. 89-1 at ¶¶ 17, 27). However, the Court will not strike the entirety of Paragraph 24 because a majority of the paragraph is Scully's personal impression of her experience with Medical Mutual.

Accordingly, Paragraph 22 and the following phrase of Paragraph 24 are **STRICKEN: "**Medical Mutual does not limit providers to some select list."

The DDS Defendants also seek to strike Paragraph 25 as improper medical opinion. (Doc. 94 at 3). In this paragraph, Scully avers:

> On September 13, 2019, after finally receiving a new chair, I had no choice but to use my ten year old powered wheelchair that was being held together with tape because my new chair (delivered February 21, 2019) was still missing critical parts for safe transportation. This was communicated to Mr. Clark. While in my bedroom, my old chair (which has needed replacement since 2016) malfunctioned, pinned me against the frame of my bed catching my left foot and causing me to break my left leg and dislocate my knee. My leg is set in place straight ahead because of the increased calcification and my disease. <u>In simple terms, this single misstep alone further accelerated and exacerbated my disability in away that will affect me my entire life and it is not the first time that DDS failures have led to such an injury.</u>

(Doc. 93 at ¶ 25).

The first four sentences describe an incident and the injuries suffered by Scully. Scully, having experienced the incident and injuries, is completely capable of testifying to these experiences. However, the final sentence attributes those injuries to having "further accelerated and exacerbated" Scully's disability, a medical opinion upon which Scully is not qualified to testify. Accordingly, the following sentence of Paragraph 25 is **STRICKEN**: "In simple terms, this single misstep alone further accelerated and exacerbated my disability in away that will affect me my entire life and it is not the first time that DDS failures have led to such an injury."

### B. Contradictory Testimony – Paragraphs 4, 13, and 16

The DDS Defendants also contend that Paragraphs 4, 13, and 16 should be stricken as contradictory to Scully's prior deposition testimony. In Paragraph 4 of her affidavit, Scully avers:

13

> I spoke to Defendant Allison Leedy on June 20, 2016 about
> the safety issues with my van lift/lock and Jerry Clark's
> failure to address it no matter how I complain. She
> acknowledge that it was "a broken system.

(Doc. 93 at ¶ 4). The DDS Defendants contend this contradicts her deposition testimony

because, at her deposition, Scully only testified to "four or five" conversations with

Leedy when Clark was on an extended leave, and Scully did not testify to this June 20

conversation during her deposition. (Doc. 87 at 16:10–24:23). Moreover, when asked if

she had any other communications with Leedy, Scully conclusively replied: "No." (*Id*. at

24:20–24:23).

However, the DDS Defendants state in their proposed undisputed facts that Scully

and Leedy spoke on June 20, 2016. (Doc. 89-1 at ¶ 81). Thus, Scully's affidavit purports

to be a more detailed explanation of a conversation that both parties agreed occurred, not

a direct contradiction of prior testimony. Accordingly, the DDS Defendants' motion to

strike Paragraph 4 is **DENIED**.

In Paragraph 13, Scully avers:

> Acts of retaliation against me began before I hired legal
> counsel. As early as 2016, they barred me from speaking to
> anyone other than my SSA, Jerry Clark, who was
> conveniently gone for medical leave in 2016. In effect,
> making it impossible for me to have my concerns addressed
> and making it impossible for anyone to be held accountable
> for failings in my legally entitled services. It took weeks to
> reach Allison Leedy to find out my SSA was absent. Jerry
> Clark didn't bother to let me know (even through my
> independent provider) that he would be out of the office and
> who to contact in Mr. Clark's absence. As my condition is
> very severe, not having the ability to contact my SSA quickly
> can be a life and death matter.

(Doc. 93 at ¶ 13) (emphasis added). The DDS Defendants contend that the statement: "It took weeks to reach Leedy to find out my SSA was absent," contradicts Scully's deposition testimony because Scully did not state this timing during her deposition. (Doc. 94 at 4).

A review of Scully's deposition testimony shows that Scully did not testify to the timing of reaching Leedy, nor was she cross-examined about the timing. (*See generally* Doc. 87 at 16:10–24:23). Accordingly, the Court finds that this statement does not <u>directly</u> contradict Scully's prior testimony, and the DDS Defendants' motion to strike paragraph 13 is **DENIED**.

In Paragraph 16, Scully avers:

> Jerry Clark's assertions that I refused to contact him is simply wrong. <u>His own manager, Defendant Allison Leedy admitted to me in 2016 that he is not great with details</u> (which unfortunately is necessary to my care). For that reason, I have handled all communications with him over the past few years through my full time HPC provider, Ali Scully (a state employee and my trusted counsel).

(Doc. 93 at ¶ 16) (emphasis added). The DDS Defendants contend that the statement: "[Clark's] own manager, Defendant Allison Leedy[,] admitted to me in 2016 that he is not great with details," contradicts Scully's deposition testimony because Scully did not provide this information at her deposition. (Doc. 94 at 4). The DDS Defendants also contend that this "statement is surprising given Leedy's testimony at her deposition that Clark is one of the DDS's best SSAs." (*Id.*)

As discussed with Paragraph 4, Scully provided testimony about all of her conversations with Leedy. (Doc. 87 at 16:10–24:23). She did not testify about such a

conversation with Leedy about Clark's attention to details, and she conclusively testified that she had no other communications with Leedy. Accordingly, the Court agrees that Scully's affidavit contradicts her prior deposition testimony. And, unlike the June 20th conversation which both parties agreed occurred, there is nothing in the record to suggest this purported conversation of Clark's attention to detail occurred. The following statement from Paragraph 16 is **STRICKEN**: "His own manager, Defendant Allison Leedy admitted to me in 2016 that he is not great with details."

Based on the foregoing, the DDS Defendants' motion to strike Scully's amended affidavit (Doc. 94) is **GRANTED IN PART** and **DENIED IN PART** as discussed *supra*.

## IV.     DDS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS (Doc. 89)

The Court next discusses the DDS Defendants' motion for summary judgment (Doc. 89), and the parties' responsive memoranda (Doc. 92-1, 92-2, 95).

### A.     Count I: Violation of Title II of ADA

Scully's first cause of action asserts a violation of Title II of the American's With Disabilities Act Public Services Provision against the DDS only. (Doc. 59 at ¶¶ 61–66).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "'[S]ervices, programs, or activities' encompasses virtually everything that a public entity does." *Johnson v. City of Saline*,

151 F.3d 564, 569 (6th Cir. 1998). "Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017).

Here, the Court finds Scully's Title II claim is one for intentional discrimination. She alleges that DDS failed, refused, or caused "outrageous delay" in providing her services "on the basis of [her] disability." (Doc. 59 at ¶¶ 61–66). She does not allege or discuss any accommodations, whether reasonable or not, in her amended complaint or response in opposition.

"We analyze claims of intentional discrimination brought pursuant to the ADA… under the familiar burden-shifting analysis established by [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]." *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (quotation and citation omitted). The burden is initially on a plaintiff to provide a prima facie case for intentional discrimination. *McDonnell*, 411 U.S. at 802. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson*, 798 F.3d at 357 (citation omitted). "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability, *i.e.*, the '[p]laintiff must present evidence that animus against the protected group was a **significant factor** in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were

knowingly responsive.'" *Id*. (quoting *Turner v. City of Englewood*, 195 Fed. App'x 346, 353 (6th Cir. 2006)) (emphasis added).

Once a plaintiff establishes a prima facie case of discrimination, the defendant "must then offer a legitimate, nondiscriminatory reason for its" challenged action. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). "If [the defendant] does so – and its burden is merely one of production, not persuasion – [the plaintiff] must then present evidence allowing a jury to find that the [defendant's] explanation is a pretext for unlawful discrimination." *Id*.

The parties do not dispute that Scully is disabled and otherwise qualified to receive disability services. Rather, the DDS challenges whether Scully can establish the third element of her prima facie case, arguing that there is no evidence of "discriminatory animus." (Doc. 89 at 14). Thus, at this summary judgment stage, Scully must set forth facts that establish a genuine dispute over whether such "discriminatory animus" was a "significant factor" in the position taken by DDS, *i.e.,* that DDS failed, refused, or caused delay in providing services to Scully because of her disability.

Scully – still represented by counsel during her opposition – failed to do so. A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (emphasis added). "A district court need only consider the evidence presented to it when considering a motion for summary judgment, regardless of whether other potentially relevant evidence exists somewhere in the record." *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010) (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007)). In other words,

"[a] district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id*. (quotation omitted).[5]

Scully provides no arguments nor citations to the record in support of her intentional discrimination claim. (*See* Doc. 92-1 at 8–9). Scully does not discuss or mention DDS' motive in her response. (*Id*.) Scully points to no evidence demonstrating that the alleged actions taken by DDS were because of Scully's disability. (*Id*.) Moreover, the undisputed facts <u>as admitted</u> by Scully evidence that the DDS, by or through its agents, have not made any negative comments about Scully or about her disability. (Doc. 89-1 at ¶ 66). Thus, as presented, there are no genuine issues remaining as to DDS' alleged discriminatory animus – or lack thereof.

Based on the foregoing, the DDS Defendants' motion for summary judgment on Count I is **GRANTED**.

### B.    Count V: ADA Retaliation

The Court next discusses Scully's other ADA claim against Defendant Clark only. (Doc. 59 at ¶¶ 97–101). Scully alleged that Defendant Clark retaliated against her for filing this lawsuit. (*Id*. at ¶ 101). Specifically, Scully contends that Clark prevented NuMotion, a mobility/mobile chair provider used by DDS, from assisting her and that Clark cancelled a wheelchair order with National Seating & Mobility, another provider. (*Id*. at ¶¶ 97–101).

---

[5] *See also* S.D. Ohio Civ. R. 7.2(b)(5) (references to prior filings must provide pinpoint citations); Judge Black Standing Order Governing Civil Motions for Summary Judgment (each statement of material fact and/or denial of fact must be followed by a specific citation or citations to evidence that would be admissible at trial).

The ADA's anti-retaliation provision states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "[T]o establish a *prima facie* case of retaliation, [the plaintiff must show] that (1) the plaintiff engaged in activity protected under the ADA; (2) the [defendant] knew of that activity; (3) the [defendant] took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rose v. Wayne Cty. Airport Auth.*, 210 F. Supp. 3d 870, 885 (E.D. Mich. 2016) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Scully contends that her protected activity was filing this lawsuit. However, Scully's claim fails because there is no causal connection between her filing the lawsuit and not receiving a chair from NuMotion or National Seating. Scully admits that "Clark has never mentioned her litigation against DDS and him." (Doc. 89-1 at ¶ 69). She cites to no admissible evidence supporting her contention that Clark cancelled a wheelchair order or otherwise prevented a company from filling her order. (Doc. 92-1 at 10–11).

Scully's retaliation claim rests on her unfounded "challenge[] that a company looking at a $60,000 sale would just walk away without being warned off by Jerry Clark." (Doc. 92-2 at ¶ 86). This speculative reasoning cannot survive the DDS Defendants' motion for summary judgment. Moreover, even construing Scully's unsupported version of the facts as true, her retaliation claim still fails. The unauthenticated email, discussed *supra*, provided by Scully in support of her claim

20

appears to be from a National Seating & Mobility representative to a Scully

representative.  (Doc. 93 at 8).  The email from National Seating states that:

> [Jerry Clark] stated waiver will not consider assisting with
> any costs of the [powered wheelchair] through NSM since we
> are out-of-network with MedMutual.  Jerry told me she will
> have to make it work with Children's Hospital or Numotion
> (regardless of past denials) before waiver would consider any
> costs.  I discussed this situation with my Manager, and we
> canceled the order because there is nothing we can do with
> this.

(*Id.*)  This email, provided by Scully, purports to show that National Seating & Mobility

– not Clark – cancelled the order.  Thus, no genuine issues remain on Scully's retaliation

claim against Clark.

Accordingly, Clark's motion for summary judgment on Count V is **GRANTED**.

### C.    Count III: 42 U.S.C. § 1983

Scully's final claim against the DDS Defendants is her Section 1983 against Clark,

Pavey, Leedy, and DDS.  In her complaint, Scully asserts a Section 1983 claim based on

disability discrimination under the Equal Protection Clause of the Fourteenth

Amendment.  (Doc. 59 at ¶¶ 67–76, 91; Doc. 92-1 at 9).

A prima facie case under Section 1983 requires (1) conduct by an individual

acting under color of state law, and (2) this conduct must deprive the plaintiff of rights

secured by the Constitution or laws of the United States.  *Day v. Wayne Cnty. Bd. of

Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984).  "To establish a violation of the Equal

Protection Clause based on disability discrimination, Plaintiff must show that there was

no rational basis for the state action that treated her differently because of her disability."

21

*Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 477 (6th Cir. 2018) (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational"). "In bringing this claim, [Scully] assumed 'the burden of showing that [the defendants] intentionally treated [Scully] differently—because [s]he is disabled—than similarly situated [individuals] who were like [her] in all relevant respects." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 684 (6th Cir. 2016) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 458 (6th Cir. 2008)); *see also Crochran Through Shields v. Columbus City Sch.*, 278 F. Supp. 3d 1013, 1020 (S.D. Ohio 2017), *aff'd*, 748 F. App'x 682 (6th Cir. 2018)).

### 1. DDS

Scully did not respond to the DDS' arguments in support of summary judgment. The Court considers Scully's Section 1983 claim against DDS abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases). Accordingly, the DDS' motion for summary judgment on Count III is **GRANTED**.

### 2. Clark

Clark contends that he is warranted summary judgment on Scully's Section 1983 claim because he did not deprive her of any rights, *i.e.*, he did not deny, delay, or interfere with Scully's services or supports. (Doc. 89 at 15). He also points to the

affidavit of Kristi Black, a professional in the field of developmental disabilities and who provided an expert report. (Doc. 83-1). Black's report opines that the DDS Defendants did not delay or interfere with any of Scully's care, particularly given the limitations on the number of qualified and willing providers available to Scully, and that the DDS Defendants provided care in accordance with applicable rules and regulations. (*Id.*)

Scully does not respond to Black's conclusions but asserts that there is no need for an expert in this case, perhaps in an effort to exclude the Black report. (Doc. 92-1 at 11–12). Like her retaliation claim, Scully's Section 1983 claim rests on her argument that Clark failed to assist her when needing a new wheelchair by interfering with and/or cancelling orders for a new chair. (*Id.* at 9–10). For evidentiary support, Scully points to two paragraphs in her own affidavit, which paragraphs do not discuss the details of ordering a new wheelchair, but her general relationship with Clark. (*Id.* at 8).

The Court declines to decide whether to exclude the Black report, finding it unnecessary for purposes of deciding the DDS Defendants' motion for summary judgment. Neither party discusses the admissibility of Black's report and Black's report offers legal conclusions, opining on the ultimate question of the DDS Defendants' liability. For example, Black poses herself a question: "Did Clark poison or interfere (sic) the relationship between NuMotion and Scully?" (Doc. 83-1 at 7). She responds to her own question: "There is no evidence to support this allegation. It is unfounded." (*Id.*) *See also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). This statement – like others in the report – opines that the DDS Defendants cannot be liable for Scully's claims based on the evidence presented.

Scully's Section 1983 claim against Clark fails for a simpler reason: Scully does not provide any evidence about how similarly situated non-disabled individuals were treated.  "Nor has she pointed to evidence that could persuade a jury that any of the challenged abuse occurred because of [her] disability."  *Gohl*, 836 F.3d at 684.  Thus, like Scully's ADA claims, her equal protection claim fails.

Accordingly, Clark's motion for summary judgment on Count III is **GRANTED**.

### 3.     Pavey & Leedy

Scully's Section 1983 claim against Pavey and Leedy are based on their supervisory roles.  (Doc. 92-1 at 10).

The Sixth Circuit "has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Id.*

As Scully failed to establish a constitutional violation against Clark and his alleged actions, judgment is similarly **GRANTED** on her claims against Pavey and Leedy.

## V.     M.C. MOBILITY SYSTEMS' MOTION FOR SUMMARY JUDGMENT (Doc. 108)

The Court last resolves M.C. Mobility Systems' motion for summary judgment (Doc. 108), or alternatively, motion to enforce the settlement agreement (Doc. 110).

M.C. Mobility moves for summary judgment on the only claim asserted against it: Count IV for negligence.  (Doc. 59 at ¶¶ 92–96).  Scully failed to respond to either motion.

When considering an unopposed motion for summary judgment, "a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).  This is because it is the moving party's "burden of establishing the nonexistence of a material factual dispute." *Id.* (quoting *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979).  However, the Court may rely on the moving party's facts when a motion for summary judgment goes unopposed because "'[n]either the trial nor appellate court…will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party.'" *Id.* 630, n.11 (quoting *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 410 (6th Cir.1992)).

Scully alleged that M.C. Mobility negligently installed a lift and a EZ Lock mechanism for her wheelchair in her van, resulting in injuries.  (Doc. 59 ¶¶ 41–43, 94).  M.C. Mobility installed the system in November 2014, returning the van to Scully on November 17, 2014.  (Doc. 108-1 at ¶ 2–4).  On December 20, 2014, a used EZ Lock system was installed.  (*Id.* at ¶ 6).  Scully injured her toes when getting into the van on January 26, 2015, which injuries Scully attributed to the EZ Lock and M.C. Mobility's installation.  (*Id.* at 10).  Scully filed her original complaint for negligence against M.C. Mobility on October 12, 2017.  (Doc. 1).  Based on these facts, M.C. Mobility contends that Scully's claim is time-barred.  (Doc. 108).

The Court applies the substantive law of the state. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Ohio law, "an action for bodily injury shall be brought within two years after the cause of action accrues."  Ohio Rev. Code § 2305.10(A).   A cause of action ordinarily accrues "when the injury or loss to the person or property occurs." *Id*.

Here, Scully was aware of the alleged negligent installation of the EZ Lock no later than January 26, 2015 – the day she injured her toes and attributed those injuries to the EZ Lock mechanism.  The time for Scully to file her negligence claim expired, at the latest, on January 26, 2017.  Scully's complaint was filed at least nine months late; thus, her claim against M.C. Mobility is time-barred.

M.C. Mobility's motion for summary judgment (Doc. 108) is **GRANTED**.  The Court does not consider M.C. Mobility's alternative request, having granted the motion for summary judgment.  Accordingly, M.C. Mobility's alternative request to enforce the settlement agreement is **DENIED as moot**.  And, because this request is moot, the Court does not reach the validity or enforceability of any purported settlement agreement between the parties.

## VI.       Conclusion

Based upon the foregoing:

1.      The DDS Defendants' motion to strike (Doc. 91) Scully's first response in opposition to their motion for summary judgment is **GRANTED**;

2.      The DDS Defendants' motion to strike the amended affidavit of Scully (Doc. 94) is **GRANTED IN PART** and **DENIED IN PART**, as discussed *supra*;

3.      The DDS Defendants' motion for summary judgment (Doc. 89) is **GRANTED**;

4.      M.C. Mobility Systems' motion for summary judgment (Doc. 108) is
        **GRANTED**;

5.      M.C. Mobility Systems' alternative motion to enforce the settlement
        agreement (Doc. 110) is **DENIED as moot**; and,

6.      The Clerk shall enter judgment accordingly, whereupon this action is
        **TERMINATED** upon the docket of this Court.

**IT IS SO ORDERED.**

Date:   _8/17/2021_               _s/Timothy S. Black_
                                  Timothy S. Black
                                  United States District Judge